COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-209-CV

 

 

IN THE INTEREST OF J.G.,

A CHILD                                                                                             

                                                                                                        

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Alberto G. appeals
from the order terminating the parent-child relationship between himself and
his daughter, J.G.  In one issue, Alberto
contends that there is no evidence or insufficient evidence to support the
trial court=s finding
that termination is in J.G.=s best interest.  Because we
hold that the evidence is legally and factually sufficient to support the
finding, we affirm the trial court=s termination order.








The State argues that Alberto=s challenge to the best interest finding is simply an attack on the
trial court=s decision
to name the State as J.G.=s managing
conservator instead of Alberto=s mother, Maria, and that therefore Alberto lacks standing and his
point should be dismissed.  Because the
State had the burden to prove by clear and convincing evidence that termination
is in J.G.=s best
interest,[2]
because the stability of the home or the proposed placement is a factor courts
consider in determining best interest,[3]
and because the record shows that the State proposed maintaining the placement
of J.G. with her foster parents in anticipation of adoption and Alberto
proposed that she be placed instead with his mother, who has legal custody of
J.G.=s sisters, we hold that Alberto does have standing and shall address
his issue on the merits.

Alberto and Valerie, J.G.=s mother, had a history with CPS, and J.G.=s two older sisters were already in the legal custody of their
paternal grandmother, Maria, because of the parents= drug use.  Maria obtained legal
custody privately in February 2005. 
Valerie was pregnant with J.G. at the time.








The evidence shows that when
J.G. was born in June 2005, she and Valerie both tested positive for
cocaine.  The State initially chose not
to place J.G. in the home with Maria and J.G.=s sisters because of concerns that Maria had allowed the parents
access to the children, had known of the parents= drug use in the home but had ignored it, and would not be able to
financially support all three children solely on her income.  After the State reevaluated Maria as a
possible placement for J.G., the financial concern dissipated but the concerns
about Maria=s ability to
protect J.G. continued.








As evidence of the State=s concerns about Maria=s ability to protect J.G., the testimony shows that she told a
caseworker that Valerie had been living in her home, on and off, until J.G. was
born, even though the trial court=s order giving her managing conservatorship over the two older girls
prohibited overnight stays by the parents. 
Additionally, a CPS worker testified that when CPS first got involved with
Alberto and Valerie, the worker made a surprise visit and found Alberto living
in Maria=s home in violation of the safety plan then in place regarding J.G.=s older sisters.  The worker
also stated that Maria acknowledged to her that she knew Alberto was using
drugs in her home.  The CPS worker
believed that Alberto was under the influence of drugs at the time of the
surprise visit.  She also testified that
Alberto admitted that he had continued to use drugs until J.G. was born, except
when he was incarcerated, despite CPS=s prior involvement and the placement of the older girls with Maria.

Additionally, Alberto was
placed on deferred adjudication in May 2005 for burglary of a habitation that
occurred in February 2005.  He testified
that he lived at Maria=s home at
the time of the burglary; he also testified that it was his permanent
address.  In May 2005, Alberto committed
another offense.  His deferred
adjudication was revoked in October 2005, based at least in part on the new
offense and the use of illegal substances while on probation, and he was
sentenced to two years in prison.  His
first eligible release date is June 2007.

Alberto testified that he
wanted J.G. to be placed with his mother and his two other daughters.  While he testified that he could abide by an
order keeping him from the children and would live with his sister upon his
release from prison, he also testified that if Maria called and needed his help
with babysitting or transporting the girls, he would help her.








At trial, he admitted to
being involved in a riot about a month after he became incarcerated, which
resulted in him being placed in medium custody, where he was prohibited from
taking classes to earn his G.E.D. 
Alberto also admitted that he was in no position to parent J.G. and that
he had engaged in a pattern of criminal behavior and substance abuse knowing
that Valerie was pregnant with J.G. 
Alberto did not have a job when J.G. was born, but he testified that he
would get a job upon his release from prison.

The CPS worker admitted that
Maria was providing a good home for the two older girls except for the protection
concerns.  However, the two older girls
have no special needs.  J.G. has asthma
and requires breathing treatments every three hours for ten days after each
attack.  She also has chronic ear
infections.  As a result of her poor
health, she frequently must stay home from daycare.  Maria smokes but has indicated some
willingness to abandon it.  She also has
a full-time job.  There was testimony
that others in the extended family, including Maria=s elderly mother, could and would help out when necessary.  Maria did not intervene to seek custody in
this case.

The State=s proposed permanency plan for J.G. is adoption by her current foster
parents, with whom she has lived since her release from the hospital into the
State=s care.  The dual-licensed
foster parents are the only parents J.G. has ever known.  A CPS worker testified that the foster mother
is a loving stay-at-home mother, J.G. is bonded with her, and the worker has no
concerns about the foster family=s ability to meet J.G.=s needs now and in the future. 
Another CPS worker testified that the foster father works full-time.








There is no indication that
Alberto and J.G. bonded in the four months between her birth and the date that
he was sentenced to prison. 
Additionally, despite the visits between the grandmother and J.G., which
sometimes included the other girls, J.G. never lived with her sisters.  Consequently, there is no presumption that
J.G. should be housed in the same home as her older sisters.[4]

Based on the record before
us, and applying the appropriate standards of review,[5]
we hold that the evidence is legally and factually sufficient to support the
trial court=s finding
that termination of Alberto=s parental rights is in J.G.=s best interest.  We overrule
Alberto=s sole issue and affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    DAUPHINOT, HOLMAN,
and GARDNER, JJ.

DELIVERED: 
November 2, 2006











[1]See Tex.
R. App. P. 47.4.





[2]See TEX. FAM. CODE ANN. ' 161.001(2) (Vernon Supp. 2006); In
re J.L., 163 S.W.3d 79, 84 (Tex. 2005).





[3]Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976).





[4]See In re D.R.L.M., 84 S.W.3d 281, 304 (Tex. App.CFort Worth 2002, pet. denied).





[5]See In re J.F.C., 96 S.W.3d
256, 265-66 (Tex. 2002); In re C.H., 89 S.W.3d 17, 25, 28 (Tex. 2002).